CASE 117—EQUITY—JANUARY 25, 1883.

## Dietz's assignee v. Sutcliffe, &c.

### APPEAL FROM FAYETTE CIRCUIT COURT.

Where goods have been obtained by fraudulent representations, the· vendor may, upon discovering the fraud, elect to treat the contract as a nullity, and bring his action for the recovery of the specified. property or an action for their value.

BRECKINRIDGE & SHELBY FOR APPELLANT. *Brief.*

1. The owner of personal property wrongfully taken cannot maintain an action on contract as for goods sold and delivered to the wrong-doer! (2 Bos. & Pul., 554; 5 Pick., 285; 4 Gray, 103; 29 Ala., 332; 36 Ind., 73; 11 N. H., 246; 43 Ind., 536; 12 Vt., 212; 3 Watts, 277; 25 Mich., 386; 43 Iowa, 187; 93 Ill., 265; Guthrie v. Wickliffe, 1 Mar., 83.)

2. A vendor of goods who has sold on a stipulated credit cannot, upon rescinding the contract for fraud on the part of the vendee, sue on contract for the value of the goods before the expiration of the credit. (1 Chitty on Cont., p. 89; Story on Sales, sec. 446; Benjamin on Sales, book 3, chap. 2, sec. 2; 9 B. & C., 58; 1 C. R. M. & R., 312; 2 M. & W., 83; 3 Camp., 351; 19 Pick., 218; 93 Ill., 265.)

3. The title of an assignee for the benefit of creditors is superior to that of a vendor who does not elect to rescind the sale for fraud until after the assignment. (Gibson v. Moore, 7 B. Mon., 92; 2 Johns. Ch'y, 189.)

MORTON & PARKER FOR APPELLEES.

No brief.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

In the month of December, 1879, J. J. Dietz made an· assignment of his stock of goods, consisting mainly of boots and shoes, to the appellant J. H. Shropshire. Prior to·

this assignment, the appellees, except W. S. Thorn & Co., instituted their action at law, and obtained attachments that were levied on the property of Dietz.

The assignee, upon his motion, was made a party defendant, and by an answer controverted all the grounds of the attachment. The actions by the appellees were in ordinary for goods sold and delivered. The appellant pleaded in each action that the goods sold to Dietz by the plaintiffs were sold on a credit, and their several accounts were not due when the suits were instituted. The appellees, in reply, and for the purpose of avoiding this defense, alleged that Dietz purchased the goods fraudulently, and for the fraudulent purpose at the time of not paying therefor; and further, that they were unable to identify the goods received by Dietz from them. A demurrer was entered to the several replications by the appellant, and the demurrer overruled. An issue was then tendered, and a judgment rendered for the appellees. The question arises in this case, as stated by counsel for the appellant, "can a vendor from whom goods have been purchased on a credit, by means of fraudulent representations, upon discovering the fraud, and before the expiration of the time of credit, sue in contract for either the stipulated price or the reasonable value of the goods," &c.? It is well settled that where the vendor has been defrauded by his vendee, the former may elect to treat the contract as a nullity, and bring his action for the recovery of the specific property, or trover for their value, and this doctrine proceeds upon the idea that the contract of sale, having been rescinded at the election of the vendee, he is still vested with the title.

Many of the authorities also go further, and maintain that, as the contract is void, or as the vendor may so treat

it, he may sue in assumpsit upon a *quantum meruit* for the reasonable value of the goods. That the vendor is entitled to such a remedy the appellant denies, and counsel have called our attention to numerous authorities sustaining this view of the question. He maintains that it is settled by the weight of authority that, in cases of wrongful taking, the law does not imply a promise to pay, and that this rule has but two exceptions—

*First.* When the wrong-doer has sold the goods and received the money, then an action for money had and received may be maintained, and the amount received for them recovered, but not the value of the goods.

*Second.* When the wrong-doer has died, an action for goods sold and delivered may be brought against his executor, as at common law an action for a tort did not survive, and if assumpsit could not be maintained, the party would be without a remedy.

This rule, and the exceptions to it, seems to have been recognized and followed in many cases. In the case of Jones v. Hoar, 5 Pick., 285, Court of Common Pleas, Strong, Justice, said: "After an examination of all the cases, the court is of the opinion that where the action is brought against the original *tort feasor*, unless there are some circumstances accompanying the transaction which will authorize the plaintiff to consider it a contract, or the property taken has been converted into money or money's worth, the plaintiff cannot waive the tort and sue in assumpsit."

In passing upon this case by the Supreme Court, Chief Justice Parker said: "The whole extent of the doctrine gathered from the books seems to be that one whose goods have been taken from him, or detained unlawfully, whereby he has a right to an action of trespass or trover, may, if

the wrong-doer sell the goods and receive the money, waive the tort, affirm the sale, and have an action for money had and received for the proceeds.   No case can be shown where assumpsit, as for goods sold, lay in such case, except it be against the executors of the wrong-doer, the tort being extinguished by the death, and no other remedy but assumpsit against the executors remaining.''

Lord Alvanly, in Bennet v. Francis, 2 Bos. & Pul., 554, said: · ''All that is to be collected from the cases is this: 'that if the goods be converted into money, the court will allow the plaintiff to waive the tort and bring an action in which he can recover nothing more than the sum actually received.''' These authorities, followed by many others, are not only persuasive, but entitled to great weight; but when considering the philosophy of the rule, and the authorities adduced in support of the doctrine announced in the cases cited, we are disposed, and particularly in a case like this, to concur in the judgment below, viz: that the action can be maintained.

In Russell v. Bell, 10 Melson & Welsby, 340, counsel in that case said: ''If you treat this as a sale, you must treat it as a sale with all the circumstances belonging to it. '' ''That proposition,'' said Lord Abinger, C. B., is true with this qualification: if the sales be made by an agent, and properly *contracted* for, the supposed vendor, · and the person buying is an honest buyer, the vendor must stand to the sale and is bound by the contract ; but if a stranger take my goods and deliver them to another man, no doubt a contract may be implied, and I may bring an action either of trover or assumpsit.   The whole class of cases have decided this point, that you may convert a tort into an action of assumpsit by bringing an action for the value of the goods so sold,

waiving the tort.   Here the bankrupt is selling goods under false colors, in order to cover transactions he knew he could not otherwise cover, and he had no right to set up his own fraudulent contract."

In Roth v. Palmer, 27 Bar., the court said: "As the plaintiffs had received nothing from the defendant on the purchase except a worthless verbal promise, there was nothing to retain as a condition precedent to the right to receive."

Nor do we see how, after the repeated adjudications of this court on the question, it is possible to say that the plaintiffs, on repudiating the contract for fraud, had not their election between contract and tort as to the form of action. The remaining question is, what is the effect of a waiver of the tort?   "Does it restore the express contract which has been repudiated for the fraud, or does it leave the parties in the same condition as if no express contract had been made —to such relations as result by implication of law from the delivery of goods by the plaintiff and their possession by the defendant?   On this subject the decisions are conflicting, but I think the weight of authority, as well as the true and logical effect of the acts of the parties, is to leave the parties to stand upon the rights and obligations resulting from the delivery and possession of the goods."   (See Anderson v. Jones, 37 Missouri; Jones v. Gregg, 17 Ind.)

In Neryard v. Sichel, 4 App., New York, it is said: "Where a party fraudulently purchased goods on a credit, and gave his note due at a future day, the vendor, upon discovering the fraud, may bring his action immediately for goods sold and delivered."

In this case the facts not only conduce to establish the fraud, but the proof is so strong as to leave no doubt in the

mind upon that question.    The fraud vitiated the entire contract as made between the parties, and the appellees, as is conceded in argument, could at once have maintained an action for the specific property; if so, and the contract as to the appellees could be treated by them as void, then we have the goods in the possession of, and owned by, the appellees delivered by them to the appellants' assignor and by him taken away.    Will not the law imply a promise, upon this state of fact, on the part of Dietz to pay to the appellees the reasonable value of the goods?

If the express contract is void, and can be treated as such by the appellees, how is it that the fraudulent vendee or his assignee can rely upon its terms to defeat the action for goods sold and delivered?    The vendee will not be allowed to set up his own fraudulent act to defeat a recovery by his vendor.    The assignee of this fraudulent vendee is relying on the special contract as a bar to the recovery, because by its terms the debts were not due at the time the several actions were instituted.

In order to avoid this defense, a state of fact is presented in the reply that, if true, renders that contract as to the appellees a nullity, and if void, it is no obstacle in the way of the action for goods sold and delivered.

The fact of the owner delivering his goods to the assignor of the appellant has no connection with any special contract as to the time at which the goods were to be paid for, or the value agreed upon by the parties.    In other words, no express contract exists, and the action for goods sold can be maintained.

As to the claim of W. S. Thorn & Co., who are asserting claim to the specific property, we need only to say that the transfer to the assignee gives to the latter no greater right

than the debtor had, and for that reason the judgment for Thorn & Co. was proper, the fraud being clearly established.

The judgment as to all the appellees is affirmed.