CASE 9—CONVERSION—DECEMBER 9.

# Ballentine, Jr. v. Joplin, Etc.

APPEAL FROM HARDIN CIRCUIT COURT.

CONVERSION—SALE BY JOINT OWNER OF PERSONALTY.—The owner of a horse may make a contract with a trainer to train and develop it for a half interest, delivering the animal for that purpose into the trainer's possession. And it is a conversion of the owner's half interest for the trainer to mortgage the entire animal as his own whereby, by foreclosure proceedings, the owner is permanently deprived of his interest and possession.

Ballentine, Jr., v. Joplin, &c.

J. P. HOBSON, FOR APPELLANT.    (J. H. VANMETER AND
JAMES MONTGOMERY, OF COUNSEL.)

1. If one of two joint owners of personal property does such an act
    or acts in reference to the common property as to induce the
    conclusion that he is disregarding the rights of his co-tenant
    by the destruction of the property or by the appropriation of it to
    his own use, then he is guilty of conversion for which
    an action of trover will lie.  Freeman on Partition, Secs. 307-9,
    note to Bowling v. Kirby, 24 Am. St. Rep., 795-819; Lucas v.
    Wasson, 24 Am. Dec., 266; Cooley on Torts (2d ed.), 455; Jaggard
    on Torts, 731-733.  Against this weight of authority, the only
    reliance to support the ruling of the court below is the case of
    Bell v. Layman, 1 Mon., 39.  That case is no authority here,
    because so much of it as bears upon the direct question here was
    dictum.  See further, Pettit v. Marble, 13 Ky. Law Rep., 780;
    Jaggard on Torts, 732-733; Cooley on Torts, 455; 2d Kent., 451;
    Freeman on Partition, sec. 307, which show that that case was
    never understood to support the doctrine contended for by
    the appellee.  See further the head notes to same case in 15
    Am. Dec., 83.  The unconfirmed judicial sale passed no title, but
    the purchaser and the plaintiff in the action were joint tort
    feasors.

2. Ozias could not vest in the purchaser from himself, either
    directly or through the intervention of a judicial sale to en-
    force a mortgage executed by him, any greater title than he
    himself possessed.  In sales of personal property the doctrine of
    *caveat emptor* applies, and all those through whose hands the
    property passes are liable to the true owner.  Powell v. Ad-
    kinson, 1 Dana, 110.

3. It was an error to assume that Ozias owned half the mare.
    By the express terms of the contract he was not to acquire a half
    interest in the mare until the expiration of three years.  He was
    therefore a mere bailee.  4 Lawson's Rights and Remedies, pp.
    2977, 2985, 2986; Chism v. Woods, 3 Am. Dec., 740; Bailey v.
    Calby, 66 Am. Dec., 752; and note 758.

4. The relations were sufficient to put purchasers upon inquiry
    and being put upon inquiry, they must be vigilant in investigat-
    ing the title of the parties in possession.  Barnard v. Campbell.
    17 Am. Rep., 208; Chism v. Woods, Hardin, 531; Adkins v. Black,
    2 J. J. M., 41.  The plaintiff procuring an attachment and sale of
    the property of a stranger and the purchaser at the same, are

responsible to the owner precisely as the vendor and vendee at private sale. 2d. Freeman on Executions, Sec. 273.

MARRIOTT & FAUREST, for appellees, JOPLIN & ESKRIDGE.

1. Under the contract made by Ballentine and Ozias, the title to the one-half interest vested in Ozias at the time of the execution of the contract and delivery of the mare under it. Barney & Smith Mfg. Co. v. Hart, 8 Ky. Law Rep., 223; Vaughn v. Hobson, 10 Bush, 337; Greer v. Church, &c., 13 Bush, 430; Baldwin v. Crow, 86 Ky., 679. And this was the construction put upon the contract by the parties themselves. Whether the title to the half interest in the mare vested in Ozias at the execution of the contract, it vested in him at the end of two years' development, but if both of these propositions should be untenable, then Ozias certainly became the owner of an undivided interest in the mare after she had been trained and developed for three seasons, (1893, 1894 and 1895). And this, by the terms of the contract itself.

2. Assuming that Ballentine and Ozias were tenants in common, the conduct of Ozias did not amount to a conversion of the property. Welch v. Clark, 12 Vt., 681; 36 Am. Dec., 368; Lucas v. Wasson, 3 Dev. L. (N. C.) 398; 24 Am. Dec., 266; Cooley on Torts, 455; Bell v. Layman, 1 Mon., 39. So much of the case of Pettit v. Marble, cited by counsel for the appellant as supports his contention, is *dictum*, and in a subsequent appeal of the same case to this court, the opinion of the superior court on the first appeal was not recognized. See further Mayhme v. Merrick, 7 C. B., 229; Farrar v. Besswick, 1 Mees. & W., 682; Morgan v. Marquis, 9 Ex., 145; Borton v. Burton, 27 Vt., 93; Pitt v. Petway, 12 Ired., 697; Oviatt v. Sage, 7 Conn., 95; Greenl. on Evidence. vol. 2, Sec. 646. The shipping of the mare out of the State by Brannan does not affect the principle herein contended for. It was a mere transfer of the possession which Ozias had a right to control.

3. The fact that the sale was made to the sheriff himself or that it has not been confirmed, does not create a liability against Joplin. In such cases, Sec. 1711 of Kentucky Statutes is not applicable. Freeman on Void Judicial Sales, Sec. 33; Cooley on Torts, 468; Clay v. Sandefer, 12 B. M., 334.

4. As against Eskridge, no case has been made out. He was not shown ever to have had possession of the mare or to have had

anything whatever to do with the sale or removal of her from the State. He was not even a party to the suit in which she was sold.

5. Judgment should not be entered on the first verdict. It is a well-settled rule that this court will not reverse on account of the granting of a new trial by the lower court unless there was a flagrant abuse of discretion by the lower court in so doing. Curtis v. Louisville Street Railway Co., 14 Ky. Law Rep., 272.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

The appellant instituted this action in the Hardin Circuit Court against F. M. Joplin, M. A. Berry, and M. H. Williams, and afterwards made R. H. Eskridge a party. The substance of the petition is that plaintiff claimed to be the owner and entitled to the possession of a bay mare, by name "May Hamilton," of the value of $500, and that defendants had unlawfully converted said mare to their own use, and shipped her to parts unknown, to his damage in the sum of $500. It is also alleged in the petition that he delivered said mare to one B. S. Ozias to train, under a written contract between him and Ozias, which contract is filed as part of the petition, and by which it was stipulated that a half interest in said mare was to vest in said Ozias at the termination of three years' development. But it is alleged that Ozias did not develop said mare for three years, or at all, and took no interest in said mare under said contract, but delivered her to the defendant Joplin, and he to the defendant Berry, and he to the defendant Williams, who shipped her to parts unknown. That all of said transfers of said mare were made without his knowledge or consent; and the said Ozias at no time had any interest in said mare, and that he did not train or develop her for two years, or any other length of time. Wherefore he prays judgment against defendants for $500. The contract reads as follows: "This contract

made and entered into this May the first, 1893, by J. G. Ballentine, Jr., of the first part, and B. S. Ozias, of the second part, wherein said J. G. Ballentine, Jr., of the first part, agrees to let B. S. Ozias, of the second part, have the bay four year old trotting mare, by name 'May Hamilton,' sired by McCurdy's Hamiltonian, dam by Baywood, for the purpose of developing and training her to the best of his ability. In consideration for above specified services, it is agreed and stipulated by said Ballentine, of the first part, that said B. S. Ozias, of the second part, is to become half owner in said bay mare, May Hamilton, when she became developed. This stipulation becomes void in case said Ballentine, of the first part, shall pay or tender to said B. S. Ozias, of the second part, on or before October 30, 1893, money in amount $180 (one hundred and eighty dollars). Furthermore, it is agreed by said B. S. Ozias, of the second part, that said Ballentine, of the first part, has the right to pay or tender on or before October 30, 1893, one hundred and eighty dollars for any and all services rendered by said bay mare, May Hamilton, from May the first to October 30, 1893; and it is hereby agreed by said B. S. Ozias, of the second part, that said Ballentine may, at his option, on or before the 30th of October, 1893, pay at that time the amount due for training the said mare, May Hamilton, and terminate this contract. But it is further agreed that, if said Ballentine does not desire to pay the amount due and take the mare at that date, that the said Ozias shall for the further training and developing of said mare (for a period of not less than two nor more than three years), and in full payment of $180 due for past training on said date, take and own a one-half interest in said mare. His said one-half interest not to vest in said Ozias until the termination of the three years' development.

Moreover, it is agreed by said Ozias, of the second part, that he (Ozias) is to bear all expenses connected with said bay mare, May Hamilton. It is furthermore agreed by said B. S. Ozias, of the second part, that he is to pay over to said Ballentine, of the first part, one-half of the winnings of said bay mare, May Hamilton, whenever she shall win a stake, purse, or racing event, or any part thereof. It is further agreed that, when the parties of the first and second part become each half owner of said mare, that no sale of her shall be made by either half owner without the consent in writing of the other. In testimony whereof we have here written our names this May 1, 1893. J. G. Ballentine, Jr. B. S. Ozias. Witness: R. L. Raines, A. M. Ballentine." The defendants demurred to the petition, which demurrer was properly overruled. The defendant Joplin in his answer denied the ownership of plaintiff, as well as the value of the mare, and also denied that any of said defendants had converted said mare to their own use, or shipped her to parts unknown; also, pleaded and relied on the possession of Ozias, and defendant's want of notice of any claim of plaintiff; also, pleaded the fact that Ozias had removed the mare from Tennessee to Kentucky, and for a considerable time had possession of her in Kentucky, claiming her as his own, and set up the execution of a mortgage from Ozias to the said Joplin; and also set up the fact of the institution of his suit against Ozias to enforce said mortgage lien, and that he obtained judgment, under which said mare was sold at public outcry, and defendant Berry became the purchaser. The answer of Williams is also a denial of the title and ownership of the plaintiff. In the second paragraph he alleges that said mare was, by a proper order of the Hardin Circuit Court duly made, exposed for sale at public outcry, etc.,

and sold for the sum of $——, to M. A. Berry, but that said Berry merely bid for this defendant, and said bid was in fact the bid of this defendant, and that said Berry took no interest in the said mare, but whatever title passed by said sale passed to this defendant, Williams, and that this defendant executed bond with security, and that said bond is amply solvent and sufficient. He also pleads the possession of Ozias of said mare. He says he in turn turned said mare over to ——, of ——, and received therefor a note on himself of the amount of $——, but that said arrangement was made before the sale, and that but for that fact he would not have taken her at a bid greater than $75, or at all, and that all through he acted in good faith, believing the mare to be the property of Ozias. The answer of Berry shows that he bought the mare for Williams, and that he claimed no interest in her, and adopts the answer of Joplin herein. The reply may be taken as a traverse of all the material averments of the answers. After the issues were fully made up, and proof heard, the jury returned a verdict for the plaintiff for the sum of $200 against defendants Joplin, Berry, and Williams, which verdict was set aside on motion of defendants. To the granting of the new trial, appellant excepted. On the second trial the court instructed the jury peremptorily to find for the defendants Joplin, Berry, and Eskridge, and under said instruction the jury returned a verdict for said defendants; and, appellant's motion for a new trial as to the defendants aforesaid having been overruled, he prosecutes this appeal.

It is insisted for appellees that appellant is estopped to assert any claim or interest in the mare in contest, by his actions, and on account of the transaction between him and Ozias, and his allowing Ozias to bring the mare

to Kentucky and claim the same as his own property.    It is also insisted that at any rate Ozias was the owner of an undivided one-half of said mare, and that in no event can plaintiff recover against any person, unless they had destroyed the joint property, or sent it out of the State and beyond the reach of appellant.    It is contended for appellant that he was at all times the sole owner of the mare, and that he is entitled to recover the full value for the conversion of the mare, against any person who might have converted the mare to his own use.    The foregoing propositions have been argued at length by counsel on each side, and a number of authorities cited.    It is perfectly manifest that under the law appellant had a right to make the contract with Ozias that he had made without parting with his title to the mare, and that unless there was a substantial compliance with the contract, or some secondary agreement between the parties, the title never passed from appellant to Ozias; and it is also manifest that Ozias could not pass to his vendee any better title than he himself possessed.    There is no evidence in this record conducing to show that appellant by any act of his is estopped from asserting title to the mare in question. It is a matter of doubt whether, in fact and in law, Ozias ever acquired any title to the mare in question; but, under the proof and circumstances in this case, we are not inclined to hold that the court erred in adjudging that Ozias was entitled to one-half interest in the property in question, and, if he had only mortgaged his one-half interest, and appellees had only claimed to purchase and sell the same, the authorities cited and arguments adduced in support of appellees' theory would be entitled to great weight.    But the incontrovertible facts in this case show that Ozias assumed and claimed to be the sole owner of the mare,

and as such mortgaged her to appellee Joplin, who accepted said mortgage, and procured a sale of her as the sole property of Ozias; and she was so purchased by Berry for Williams, and by Williams sold to a man from Ohio. The foregoing being the exact facts in this case, it seems to us that the doctrine of joint tenancy, or tenancy in common, so ably discussed by appellees' counsel, can not be applied to this case. It may be that some courts of last resort have rendered decisions sustaining the contention of appellees, but we think that the decided weight of authority, as well as the reason and common sense of the law, is against appellees' contention. In this case all the parties have repudiated and disregarded the claim of title of appellant, and have taken, bought, sold, and disposed of the property in question as the sole property of Ozias; and we can see no difference between this case and a case where the entire title to the property in dispute was unquestionably in the appellant. Shall the appellees in this case, after having sought to hold and treat May Hamilton as the sole property of Ozias, and as such converted her to their own use, be now heard to say, when it is apparent that they can not hold under the title which they claim, and under which they took possession, that they will now shelter under the proposition that Ozias was a tenant in common, and "we will not claim as tenants in common, or joint owners"? We think they can not so claim or shelter themselves. The written contract between appellant and Ozias stipulated that neither one should sell his interest without the consent of the other. In Pool v. Adkisson, 1 Dana, 111, it is said: "Any person who has had possession of, and has sold, used, or detained, the property of another, either for himself, or as agent or servant of a stranger, is liable in detinue to the true

owner for the property or its value, whether he was or was not cognizant of the right of the true owner, and whether he had or had not parted with the possession before the suit." In the case at bar it is clear that all the appellees repudiated the title and claim of appellant to the property, and attempted to convert the same to their own use; and it therefore follows that they placed themselves, as to the one-half interest in the mare, in the same attitude in regard thereto as if Ozias had not had any interest in the mare. It is said in Freem. On Partition, Secs. 307-309: "He who sells his co-tenant's share of the property to a stranger who will hold against him has violated the relation he bore and injured his companion as much, perhaps, as if he had destroyed the property. * * * Whoever assumes the right of ownership and the power of disposition over personal property, and carries this assumed authority so far as to dispose of the thing as his own, thereby converts it, and makes himself liable to an action of trover."

It is clear from the pleadings and proof in this case that appellee Joplin procured the sale of the mare in contest, and that Berry bid her off for Williams, and turned her over to Williams, and that Williams converted the same to his own use. It does not appear that Eskridge was a participant in the transaction. Taking the whole case together, we are not disposed to set aside the first order granting appellees a new trial; but the court below erred in giving the peremptory instruction to the jury to find for Joplin and Berry, and erred in overruling the appellant's motion for a new trial in regard thereto. It is clear from the evidence that appellant was entitled to recover one-half the value of the mare at the time Joplin

caused her seizure under the attachment. The judgment appealed from is therefore reversed as to Joplin and Berry, and cause remanded, with directions to award the appellant a new trial, and for proceedings consistent herewith.