CASE 11.—ACTION BY THE GRAY & DUDLEY HARDWARE
COMPANY AGAINST THE AMERICAN-GERMAN
NATIONAL BANK OF PADUCAH AND OTHERS, TO
RECOVER A LOT OF MERCHNDISE.—May 22.

## Am.-German Nat. Bank v. Gray & Dudley H'd'w Co., &c.

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

Judgment for plaintiff. Defendant bank appeals.—
Affirmed.

1. Sales—Remedies of Seller—Recovery of Goods Delivered.—
Where goods had been obtained by a buyer without any
intentional or reasonable expectation of paying for them, and
with a design of cheating the seller out of his goods or to
obtain them without consideration, the seller may, on dis-
covering the fraud, elect to treat the contract of sale as a
nullity, and bring his action for the recovery of the specific
property or the value thereof.

2. Same—Fraudulent Conduct of Buyer—Evidence—Sufficiency.
—In an action of claim and delivery for merchandise sold by
plaintiff to defendant on credit, evidence held to authorize
a finding that the goods were obtained by the fraudulent in-
tent of defendant not to pay for them at a time he had no
reasonable expectation of being able to pay for them, author-
izing a recovery.

3. Same—Bona Fide Purchasers.—Where a buyer on credit ob-
tained possession of the goods by fraud, and placed them in
a warehouse, and assigned the warehouse receipt to a creditor
bank, which on sale of the goods received their value, the
bank could defend an action of claim and delivery by the
seller only on the ground that he was an innocent purchaser
for value without notice.

4. Same.—Whether a bank was an innocent puchaser for value
without notice from a buyer on credit who obtained possession

of the goods from the seller with a fraudulent intent to defraud the seller is for the jury.

5. Same.—An insolvent buyer of goods on credit obtained possession of them without intending to pay for them. The goods were delivered to a warehouse, and the warehouse receipt was delivered to a bank. The goods were subsequently sold, and the proceeds applied to the buyer's debt to the bank. Held, in an action of claim and delivery by the seller against the bank, that an instruction authorizing a verdict for the bank on a finding that the warehouse receipt was delivered to the bank for money loaned to the buyer or for a note discounted by the bank at the instance of the buyer by reason of the delivery of the receipt, and on the faith thereof without any knowledge or notice that the buyer had obtained the goods from the seller with the fraudulent design not to pay for them, sufficiently presented the defense that the bank was a purchaser for value without notice.

6. Same.—In an action of claim and delivery by a seller of goods on credit to a fraudulent buyer against persons claiming under the buyer, the seller simply sought to recover the goods as his own without charging that he had been deprived of the possession thereof by fraud. Held, that he might recover by showing that he sold and delivered the goods in the regular course of trade to the buyer, and as seller placed the buyer in possession of and invested it with title to the goods, since the seller had the right to treat the goods as his own and sue for their recovery or their value in case of their conversion.

7. Same.—In an action of claim and delivery brought by a seller of the goods in controversy against persons claiming under the fraudulent buyer, a defendant who had received the proceeds on the sale of the goods could not defeat a judgment against him on the ground that a codefendant admitted that it had possession of the goods.

8. Action—Forms of Action—Code Provisions.—Forms of action are abolished by the Code, and all that is required is to state the facts constituting a cause of action without reference to the form of the petition.

9. Replevin—Nature of Action—Petition.—The action of claim and delivery requires a particular description of the property claimed and also the separate value of each article; the purpose of stating the separate value of each article being to enable the court to render judgment in case defendant fails to deliver the property.

10. Same.—The action of claim and delivery takes the place

and has in it all the elements of detinue, replevin, and trover; and, where the party in possession has converted the property and no longer has it in his possession, he is liable for the value thereof.

11. Same.—Where the petition in an action for claim and delivery set forth the separate value of each article claimed and prayed not only for a recovery of the property but for all proper relief, a judgment for the value of the property was proper, on it appearing that defendant was not a bona fide purchaser of the property without notice of plaintiff's claim, and had converted the proceeds thereof to its own use.

12. Appeal—Review—Errors Not Assigned as Ground for New Trial.—Where, in an action for claim and delivery, a defendant admitted possession of the property, and the court gave judgment against the codefendant who had received the proceeds of a sale of the property, the fact that judgment was not given against defendant could not be considered where the same was not assigned as a ground for a new trial.

13. Sales—Replevin by Seller—Admission of Possession—Effect. —In an action of claim and delivery, the fact that a defendant admitted possession of the property does not authorize the rendition of a judgment against him where the evidence showed that he bought and paid for the property without notice of the fraud by which it had been obtained from plaintiff.

BRADSHAW & BRADSHAW for appellant.

FLOURNEY & REED and W. D. GREEN of counsel.

## ARGUMENT.

The appellant, American-German National Bank, contends that there are three valid and sound reasons why the judgment of the lower court should not be permitted to stand:

First. Because on the merits of the case there was absolutely no evidence to sustain a verdict for the appellee against any of the defendants except E. Rehkopf Saddlery Company or even against it in this proceeding.

Second. There was a fatal variance between appellees pleadings and proof.

Third. The court erred in rendering judgment against the appellee, American-German National Bank, because there was no proof of detention or possession by it at the time of the institution of the action, but on the contrary defendant, Starke-Ullman

Saddlery Company, admitted detention and possession by it at said time.

## CITATIONS.

Union Trust Company v. Bulkeley, 150 Fed. Rep., 510; Union Trust Company v. Wilson, 158 U. S., 154; Gibson v. Moore, 7 B. Mon., 92; Mansel's Admr. v. Israel, 3 Bibb., 510; Civil Code of Prac. of Ky., 90; Baldwin & Co. v. DeWitt, 19 Ky. Law Rep., 1250; Berlin Mch. Works v. Ala. City Furniture Co., 112 Ala., 488, 20 So., 418; Bowling v. Fanning, 97 Ala., 619, 12 So., 59; Graham v. Myers, 74 Ala., 432; Gilbreath v. Jones, 66 Ala., 129; Henderson v. Felts, 58 Ala., 590; Walker v. Fenner, 20 Ala., 192; Davis v. Herndon, 32 Miss., 484; Haughton v. Newberry, 69 N. C., 456; Foscue v. Eubank, 32 N. C., 424; Charles v. Elliott, 20 N. C., 606; American & Eng. Encyc. of Law, 1st Ed., vol. 5, p. 653; Pool v. Atkisson, 1 Dana, 110; Bush, et al. v. White, 3 T. B. Monroe, 100.

HENDRICK, MARBLE & MILLER for appellee.

No brief in the record for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

The Gray & Dudley Hardware Company, a Tennessee corporation, brought this suit of claim and delivery in the McCracken circuit court on the 24th day of September, 1906, for a lot of merchandise, consisting of whips and lashes, valued at $348.45, claiming to be the owner of said property. The parties defendant to the original petition were E. Rehkopf Saddlery Company, R. J. Barber, assignee of E. Rehkopf Saddlery Company, American-German National Bank, and the Cohankus Manufacturing Company. On September 25, 1906, an amended petition was filed, making W. S. O'Brien, O. B. Starks, and the Starks-Ullman Saddlery Company parties defendant, and claiming that said merchandise was detained by these defend-

ants in conjunction with the other defendants in the original petition. To the original and amended petitions each of the defendants, except the E. Rehkopf Saddlery Company and its assignee, filed a separate answer. The defendants W. S. O'Brien, O. B. Starks, Cohankus Manufacturing Company, and the American-German National Bank each denied that they had possession of, or set up any claim to, or had any control over, said whips and lashes. The Starks-Ullman Saddlery Company, in its answer, claimed that it had full possession and control over said merchandise and was the owner thereof; that it had acquired title to same in due course of trade by becoming an innocent purchaser thereof for a valuable consideration, without notice of any alleged prior rights of others thereto. Trial was had, and the jury brought in a verdict finding for plaintiff the goods sued for, and further finding them to be of the value of $348.45. Thereafter the court rendered judgment against the American-German National Bank for the recovery of said goods, or their value—$348.45. From an order overruling its motion and grounds for a new trial, the American-German National Bank prosecutes this appeal.

It appears from the record that on August 23, 1906, the Gray & Dudley Hardware Company which had a branch establishment at Eddyville, Ky., received by mail an order for a lot of whips and lashes from the E. Rehkopf Saddlery Company. On Monday, September 3, 1906, the Gray & Dudley Hardware Company (appellee) shipped to the E. Rehkopf Saddlery Company whips and lashes to the value of $348.45. On September 20, 1906, the E. Rehkopf Saddlery Company made a deed of assignment to R. J. Barber for the benefit of its creditors. At the time of the assignment the assets of the E. Rehkopf Saddlery Company

amounted to about $25,000, while its liabilities amounted to over $150,000. The goods were received by the E. Rehkopf Saddlery Company on September 6th, and were delivered to the Cohankus Manufacturing Company. R. S. Mason testified that he was the general manager of the Gray & Dudley Hardware Company at Eddyville. After detailing the facts connected with the purchase, he said that he came to Paducah on September 22, 1906. After supper he saw Mr. Rehkopf, and asked him if he knew where the goods were. The latter replied that they were in the warehouse, but he did not know what warehouse. He then went and found the goods at the Cohankus Manufacturing Company's warehouse, which is located just across from the Starks—Ullman Saddlery Company. He met Mr. Starks in front of the postoffice, and Mr. Starks told him that the goods were out at the warehouse, but he did not want him to tell the old man that he (Starks) had told him. The conversation occurred about half past 5 or 6 o'clock Saturday evening. On Sunday morning Mason went and found the goods. On the following day suit was instituted. When he found the goods they were in the original packages, just as they had been shipped. There were other goods in the warehouse. The goods he saw were those ordered by the E. Rehkopf Saddlery Company. When he went with the sheriff to find the goods, they had been removed from where they were on Sunday, and they experienced some difficulty in finding them. Mr. Starks did not assist in the search. When the sheriff wrote on the box, Mr. Starks said they were his goods. He then told Mr. Starks that, if they were his goods, he had purchased them since Saturday night. Mr. Starks replied that he would show when they came to court that they were his goods. When looking over

the papers of the E. Rehkopf Saddlery Company, he saw a note for $6,000, signed by Oscar Harper and payable to the American-German National Bank, or warehouse—he did not remember which. When he saw the note of Oscar Harper, Mr. Rehkopf said to him: "I made this note, and put this leather in there to the bank. He wasn't satisfied with it, and I put your whips in with it too, after he contended that he must have your stuff, and I put your whips in there too."

The president of the American-German National Bank testified that on September 4, 1906, E. Rehkopf, president of the E. Rehkopf Saddlery Company, brought to the bank for discount a note of O. C. Harper, executed to the E. Rehkopf Saddlery Company and indorsed by E. Rehkopf, and offered $6,200 of warehouse receipts as collateral security for same. Not being satisfied with the security, he demanded more, and Rehkopf promised to deliver to him additional collateral in a few days. With that understanding, the note was accepted by the bank, and the proceeds placed to the credit of the E. Rehkopf Saddlery Company. This was a new loan, and not a renewal of any old loan. Pursuant to his agreement, Rehkopf on September 11, 1906, offered additional security in the shape of warehouse receipt No. 21, issued to the E. Rehkopf Saddlery Company by W. S. O'Brien, a public warehouseman of Paducah, Ky., covering a lot of whips and lashes valued at $348.45. He accepted this additional collateral, not knowing from whom or when the whips had been bought. He believed at the time of the transaction from the reports of commercial agencies and other sources that the E. Rehkopf Saddlery Company was entirely solvent. The E. Rehkopf Saddlery Company had for a long time been a cus-

tomer of the bank and a large borrower, and had notes and bills maturing almost daily. Afterward, on September 16, 1906, the president of the American-German National Bank notified E. Rehkopf that the bank was carrying too much of his paper, and that he must do something to reduce his loans. On September 17, 1906, the whips and lashes covered by said warehouse receipts No. 21, together with a large lot of other merchandise, amounting to something like $23,000, were sold by the bank, with the consent and pursuant to the instructions of E. Rehkopf, the president of the E. Rehkopf Saddlery Company, to the Starks-Ullman Saddlery Company, and the proceeds credited on the indebtedness of the E. Rehkopf Saddlery Company. Invoices of all the goods sold were delivered to the Starks-Ullman Saddlery Company at the time of the sale.

O. B. Starks testified that he was the president of the Starks-Ullman Saddlery Company, and that on September 17, 1906, he, as president of said company, bought the merchandise in controversy, together with other merchandise, from the American-German National Bank, which held the warehouse receipts for the same, and delivered to him an invoice for the goods that were stored in the public warehouse of W. S. O'Brien at the Cohankus factory. At the time he did not know from whom the E. Rehkopf Saddlery Company had bought the property.

W. S. O'Brien testified that he was the keeper of warehouses in Paducah, Ky. He leased warehouses, issued warehouse receipts, and kept records of goods received and receipts issued. He had leased the Cohankus house where the goods were stored. He received them on September 11, 1906, and issued a

warehouse receipt therefor on that day to the E. Reh-kopf Saddlery Company.

Appellant contends for a reversal on the following grounds: (1) The verdict was against the evidence. (2) There was a fatal variance between appellee's pleading and proof. (3) The court erred in rendering judgment against the appellant American-German National Bank, because there was no proof of detention or possession by it at the time of the institution of the action, but, on the contrary, the defendant Starks-Ullman Saddlery Company admitted the detention and possession by it at said time.

First. The law is now well settled that where goods have been obtained by a party without any intention or reasonable expectation of paying for same, and with a design of cheating the vendor out of his goods, or to obtain them without consideration, the vendor may, upon discovering the fraud, elect to treat the contract of sale as a nullity and bring his action for the recovery of the specified property, or an action for its value. 24 Am. & Eng. Ency. of Law, 1135; Dietz's Assignee v. Sutcliffe, 80 Ky. 650, 4 Ky. L. R. 837; Brown v. Popham, 15 Ky. L. R. 543; Crozier's Assignee v. Cromie, 14 Ky. L. R. 858. In actions of this kind it is difficult to prove the fraud of the purchaser except by his subsequent conduct. At the time the E. Rehkopf Saddlery Company purchased the goods in question, its assets did not amount to over $25,000, and its liabilities were over $150,000. These liabilities consisted of small accounts due various parties in all parts of the United States. When the goods were received by the E. Rehkopf Saddlery Company, they were not opened or taken out of the original packages. They were delivered to a warehouse and the warehouse receipt was then delivered to appellant. The

goods were not sold, nor was it sought to sell them in due course of trade. A warehouse receipt was delivered to the bank, and the goods subsequently sold along with other merchandise to the Starks-Ullman Saddlery Company. The entire proceeds of this sale, including the proceeds from the whips and lashes sold by appellee to the E. Rehkopf Saddlery Company, were applied to the payment of the latter's indebtedness to the bank. At the time the goods were purchased, the E. Rehkopf Saddlery Company could not have paid to its creditors over 16 2-3 cents on the dollar. The turning over of the proceeds of the sale in question to the bank shows that it did not even intend to pay this much to its general creditors, including appellee, but proposed to apply the whole proceeds to the payment of its indebtedness to the bank. From this evidence we think the jury was authorized to conclude that the goods were obtained by fraud. The goods being obtained by fraud, and appellant having received the goods, it could defend only on the ground that it was an innocent purchaser for value without notice. Counsel for appellant contend that under the rule laid down in Union Trust Co. v. Gulkeley, 150 Fed. 510, 80 C. C. A. 328, the discounting of the note for $6,000, and the placing of the proceeds to E. Rehkopf Saddery Company's credit with the understanding at the time that additional collateral was to be furnished, made it an innocent purchaser for value; and, as the president of the bank testified that he believed the E. Rehkopf Saddlery Company was solvent, and did not know when or from whom it purchased the property in question, the bank certainly had no notice that the goods had been obtained by fraud. Even conceding the law to be as stated, the statements of the president of the bank are not con-

clusive of the character of the transaction in a case like this. It does not conclusively appear that the saddlery cor    :ny really received the benefit of the proceeds of the note discounted by the bank. The president only claims that the saddlery company got the benefit of it; that it was placed to its credit. The mere deposit of that amount of money to the credit of the saddlery company does not show that the latter received the benefit of it. From all that may be gathered from the statements of the president of the bank, it may, as a matter of fact, have been used to pay an overdraft or other indebtedness on the part of the saddlery company to the bank. If, as a matter of fact, the proceeds were used to liquidate other indebtedness due the bank by the saddlery company, the money advanced by the bank on the note was in effect a mere payment of pre-existing indebtedness, and did not constitute the bank an innocent purchaser for value. The acts of the president in demanding more collateral, as well as in disposing of the goods for which the bank held warehouse receipts, show that the bank was, to say the least, very uneasy about the saddlery company's indebtedness to it. That the saddlery company was largely indebted to the bank and had done its business at the bank for a number of years, that the bank demanded additional collateral and afterwards disposed of all the goods for which it held warehouse receipts for the purpose of reducing the indebtedness of the saddlery company to it, coupled with the further fact that, within a few days thereafter, the saddlery company made an assignment, show a condition of affairs from which the jury might have reasonably inferred that the officers of the bank knew of the saddlery company's insolvency, and that it was unable to pay for goods it was purchasing at

that time. · Owing to the many peculiar and suspicious circumstances connected with the case, we think the question, whether or not the bank was an innocent purchaser for value without notice, was one for the jury, who heard all the witnesses and knew many of them personally, and could best tell what credence to give to their statments.

The court instructed the jury as follows:

"No. 1. If you shall believe from the evidence in this case that at the time the defendant E. Rehkopf Saddlery Company ordered and obtained from the plaintiff the goods in controversy in this action that said defendant's officers or agents ordering or obtaining said goods knew that said E. Rehkopf Saddlery Company was insolvent, and had no reasonable expectation of being able to pay plaintiff for said goods, and made the order for said goods without any intention of paying for same, or without any reasonable expectation of paying therefor, and with the design of cheating the plaintiff out of said goods, or to obtain them without consideration, and that said officers or agents concealed said designs from the plaintiff, then in law the plaintiff is the owner of the goods sued for, and entitled to recover possession thereof, and, if you shall so believe, then you will find for the plaintiff the goods sued for, and in your verdict fix the value thereof at not exceeding three hundred and forty-eight dollars and forty-five cents ($348.45), the value alleged in the petition, unless you shall believe as stated in instruction No. 3 herein, and this instruction is given you subject to said instruction No. 3.

"No. 2. But, unless you shall believe from the evidence in this case that the goods in controversy were obtained from plaintiff by defendant E. Rehkopf Saddlery Company under the facts and circumstances

stated to you in instruction No. 1 herein, then the law is for the defendant, and you will so find.

"No. 3. Although you may believe from the evidence that the goods in controversy were obtained from plaintiff by defendant E. Rehkopf Saddlery Company under the facts and circumstances stated to you in instruction No. 1 herein, yet if you shall further believe from the evidence in this case that after the delivery of said goods by plaintiff to defendant E. Rehkopf Saddlery Company that said saddlery company placed same in a public warehouse in the city of Paducah, Ky., and caused the warehouse receipt exhibited to you in evidence to be issued covering said goods, and shall further believe that said warehouse receipt was delivered and pledged by said E. Rehkopf Saddlery Company to the defendant American-German National Bank for money loaned to said saddlery company, or for a note or notes discounted at the instance or request of said E. Rehkopf Saddlery Company, or its officers or agents, by reason of the delivery to it, and upon the faith of said warehouse receipt, and without any knowledge or notice that said E. Rehkopf Saddlery Company had obtained said goods from the plaintiff under the facts and circumstances stated to you in instruction No. 1 herein, if you shall believe that said goods had been so obtained, then the law is for the defendant, and you will so find. But, unless you shall so believe from the evidence, then the law is for the plaintiff as defined to you by instruction No. 1 herein."

Instruction No. 1 properly presents the law as to whether or not the goods were obtained by fraud. Instruction No. 3 presents appellant's defense in language as favorable to it as it could reasonably contend for. In this instruction the jury were told to find for

the defendant if they believed that the warehouse receipt was delivered and pledged by the E. Rehkopf Saddlery Company to the American-German National Bank for money loaned to said saddlery company, or for a note or notes discounted by it at the instance or request of the E. Rehkopf Saddlery Company, or its officers or agents, by reason of the delivery to it, and upon the faith of said warehouse receipt, and without any knowledge or notice that the E. Rehkopf Saddlery Company had obtained the goods from the plaintiff under the facts and circumstances stated in instruction No. 1. In finding for the appellee, the jury must have believed either that the bank did not buy the note in question for a valuable consideration, or that it had notice of the fact that the goods were fraudulently detained. While the bank may not have had notice of the latter fact, the circumstances surrounding the $6,000 transaction and the subsequent delivery of collateral security are such as to lead us to the conclusion that the verdict of the jury was not flagrantly against the weight of the evidence.

Second. It is contended by counsel for appellant that as appellee's petition did not charge that it had been deprived of possession of, or title to, the goods by fraud, but simply sought to recover the property as its own, it could not do so under the proof in this case, appellee showing by its own witnesses that it sold and delivered the goods in the regular course of trade to the E. Rehkopf Saddlery Company, and had as vendor placed said vendee in possession of, and invested it with, title to said goods. In this view of the law, however, counsel are mistaken. Appellee had the right to treat the goods as its own, and sue for their recovery or their value in case of their conversion. This rule is well settled by a long line of

authorities. Dietz's Assignee v. Sutcliffe, 80 Ky. 650, 4 Ky. Law Rep. 837; Longdale Iron Co. v. Swift's Iron & Steel Works, 91 Ky. 191, 15 S. W. 183, 12 Ky. Law Rep. 848; Reager v. Kendall, 39 S. W. 257, 19 Ky. Law Rep. 27.

Third. Counsel for appellant further contend that as the American-German National Bank did not have possession of the goods in question at the time of the institution of the suit, and as the Starks-Ullman Saddlery Company answered admitting that it had possession of the goods, judgment could not properly go against appellant. In the early case of Pool v. Adkisson et al., 1 Dana 110, which was an action of detinue for the recovery of two slaves who, the proof showed, were at that time in the State of Missouri, the court, speaking through Chief Justice Robertson, said: "But is detinue maintainable? We think it is. Since the case of Burnley v. Lambert, 2 Wash. 308, it has been considered that proof of possession by the defendant at the date of the writ is not necessary in an action of detinue. In Southcote's Case, 4 Co. Rep. 83, detinue was maintained against a bailee (to keep safely) after he had been robbed of the thing bailed. In many cases it would be difficult to ascertain the motive which induced a defendant to part with the property prior to the institution of the suit for it. And surely the right to maintain detinue can not depend on grounds so precarious and delusive as the fact that the defendant was in the possession at the date of the writ, or at the time of its service, or the fact that, in parting with the possession prior thereto, he had acted wantonly or in bad faith. Such a metaphysical inquiry as the latter seems not to be required by principle or authority, and would, were it required, tend to the subversion of the action of detinue." Furthermore,

it has been held that the owner of property may maintain an action for its value against a person converting it, whether he be the original trespasser or not. Ballentine, Jr., v. Joplin, etc., 105 Ky. 70, 20 Ky. Law Rep. 1062, 48 S. W. 417; Justice v. Mendell & McLanahan, 14 B. Mon. 10; Newcomb-Buchanan Co. v. Baskett, 14 Bush 658. Forms of action were abolished by the Code. All that is now required is to state the facts constituting a cause of action, without reference to the form of the petition. The present action of claim and delivery requires a particular description of the property claimed, and also the separate value of each article, to be stated. The very purpose of stating the separate value of each article is to enable the court to render judgment in case the defendant fails to deliver the property. Indeed, the action of claim and delivery takes the place and has in it all the elements of detinue, replevin, and trover. If the party in possession has converted the property, and no longer has it in his possession, he is liable for the value thereof.

But counsel for appellant contend that appellee's petition was defective, and that he could only recover the value of the property in case he asked for that specific relief. Appellee's petition, however, complied with all the provisions of the statute with reference to an action for claim and delivery. It set forth the separate value of each article, and not only prayed for a recovery of the property, but for all proper relief. Assuming, as was found by the jury, that appellant was not a bona fide purchaser for value without notice, it necessarily, then, converted the proceeds of appellee's property to its own use. It alone received the proceeds of the property, when it was not entitled to

receive any portion thereof. The court did not err in giving judgment against appellant.

The fact that judgment was not given against the Starks-Ullman Company is not assigned as ground for a new trial, and it can not therefore be considered. However, it may be said that judgment should not have gone against the latter company merely because it admitted possession of the property, if the evidence showed that that company bought and paid for the goods without notice of the fraud by which they had been obtained.

Perceiving no substantial error in the record, the judgment is affirmed.